# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARK ANTHONY FARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-359-HE |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff, Mark Anthony Farris, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB) and supplemental security income (SSI). This matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). Because the ALJ failed to address an inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles (DOT), it is recommended that the Commissioner's decision be reversed and the case remanded for further administrative proceedings consistent with this Report and Recommendation.

## I. Procedural Background

On January 30, 2012, Plaintiff protectively filed an application for DIB and SSI. *See* Administrative Record (AR) [Doc. No. 13], 10. The Social Security Administration (SSA) denied the applications initially and on reconsideration. AR 82-83, 85-86. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision dated August 26, 2014. AR 7-

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, Acting Commissioner of Social Security Administration, is hereby substituted as the proper Defendant in this action.

25. The Appeals Council denied Plaintiff's request for review. AR 1-3. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff seeks judicial review of this final agency decision.

## II.     The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluation process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since November 15, 2011, his alleged onset date. AR 12.

At step two, the ALJ determined Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine (with associated radicular arm, hand, leg pain, and shoulder pain), chronic neck pain, depression, anxiety, and residual effects of gastric bypass surgery. AR 12.[2] At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13-14.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding:

> [Plaintiff] has the residual functional capacity to perform a range of light and sedentary exertional work. More specifically, he can lift/carry up to 20 pounds. He can stand for 6 hours, walk for 6 hours and sit for 6 hours in an 8-hour workday. He is slightly limited in his ability to squat. He has a slightly [sic] limitation in his ability to finger, feel, and grip and in the ability to operate foot controls (between frequent and constant). He can occasionally climb, bend, stoop, kneel, crouch, crawl, reach over head, and twist/nod his head. He must avoid rough/uneven surfaces, unprotected heights, and dangerous machinery. He must have easy access to a restroom. His work must [be] simple and routine. He has a slight limitation in contact with the general public. He must have the option to alternate positions.

---

[2] The ALJ also found Plaintiff had non-severe impairments of hypertension, history of deep vein thrombosis, and history of substance abuse. AR 13.

AR 14-18. The ALJ determined Plaintiff was unable to perform any past relevant work. AR 19. Relying on the testimony of a vocational expert (VE), the ALJ found there were jobs that existed in significant numbers in that national economy that Plaintiff could perform—Cashier II, Ticket Seller, and Surveillance System Monitor. AR 19-20. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 20.

### III. Issues Presented for Judicial Review

Plaintiff contends the ALJ made two errors: (1) he did not properly evaluate the opinion of Plaintiff's treating physician; and (2) he made a step-five finding based on testimony by the VE that was in conflict with the DOT. Pl.'s Opening Br. (Pl.'s Br.) [Doc. No. 17]. There is no reversible error with regard to the ALJ's evaluation of the treating-physician opinion. The conflict between the VE's testimony and the DOT, however, requires remand.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular

types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V. **Analysis**

    A. **The ALJ's Analysis of Plaintiff's Treating Physician's Opinion**

        1. **Standards Governing Treating Physician Opinions**

A sequential, two-step inquiry governs an ALJ's evaluation of the medical opinions of a claimant's treating physician. This inquiry is mandatory, and each step is "analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether the opinion is entitled to "controlling weight." If the opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," then the opinion must be given controlling weight. *Id*.

When a treating physician opinion is not entitled to controlling weight, the opinion is still entitled to deference. Thus, at the second step of the inquiry, "the ALJ must make clear how much weight the opinion is being given and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id*.[3] As the Tenth Circuit has made clear: "[i]f this is not done, a remand is required." *Id*. The relevant factors governing the second step of the inquiry include: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's

---

[3] When a treating physician's opinion is rejected, the ALJ must "articulate specific, legitimate reasons for his decision." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Although the ALJ gave "limited weight" to the opinion of Dr. Kelly, it is clear the ALJ rejected the opinion because he did not adopt any portion of it into the RFC. *Compare* AR 15 *with* AR 631.

4

opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1331 (citation omitted).

### 2. Treating Physician's Opinion

Dr. S. Blake Kelly began treating Plaintiff on April 27, 2009. AR 631. On April 16, 2013, Dr. Kelly opined: "as a result of chronic pain, depression, and any side effects of medication, [Plaintiff] would be unable to maintain a five-day week or eight-hour day in any work capacity. He would require lengthier and more frequent breaks than are usually allowed in the work place and could be expected to be absent from work at least 10 percent of the time." AR 631.

### 3. The Analysis of Dr. Kelly's Opinion

The ALJ provided the following reasons for assigning the opinion limited weight:[4] (1) Dr. Kelly's opinion is without substantial support from the other evidence of record; (2) Dr. Kelly's reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness; (3) Dr. Kelly did not have the benefit of reviewing the other medical reports contained in the record; (4) Dr. Kelly's opinion was conclusory, providing very little explanation of the evidence relied on in forming the opinion; and (5) there was no evidence that Dr. Kelly was familiar with the Agency's rules and regulations regarding disability. AR 18. Plaintiff takes issue with each of these reasons and contends the ALJ's analysis constitutes reversible error. Pl.'s Br. 15.[5]

---

[4] The ALJ did not explicitly decline to give the opinion controlling weight, but such omission does not constitute reversible error. *See Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014).

[5] Page references to briefs are to the CM/ECF page number.

Plaintiff addresses the first and second—the lack of substantial support from other evidence and the lack of significant clinical and laboratory abnormalities in Dr. Kelly's records—together. Plaintiff first argues these findings were "rather vague given their lack of citation to any specific evidence." Pl.'s Br. 16. Earlier in the decision, however, the ALJ discussed why no further limitations (than those already included in the RFC) were supported by the record:

> [T]here is no substantial evidence that [Plaintiff] has required frequent emergency room visits due to any back impairment. Further, the consultative examination by Dr. [Serena] Anderson only revealed a reduction in range of motion from the lumbar spine, not any other extremity/joint. Recent records from Dr. [Brad] Starkey revealed that [Plaintiff's] back symptoms were "controlled[.]"
>
> There is also no substantial evidence of neurological deficits that are reflected by motor loss, reflex loss or sensory loss. Likewise, [Plaintiff] does not have any of the stigmata frequently observed in the patient who suffers constant, unremitting pain which is totally unresponsive to therapeutic measures, such as drawn features, muscle atrophy, expressions of suffering, or significant weight loss. Also important to note, no assistive device for ambulating has been prescribed, and [Plaintiff] does not regularly require the use of a back brace.

AR 17 (citation omitted).[6] Thus, the ALJ cited specific evidence as to why additional limitations were not supported by the record and why Plaintiff did not have abnormalities one would expect if Plaintiff were disabled.

Plaintiff further contends the medical evidence contradicts the ALJ's findings and cites various medical records in an attempt to show that the ALJ selectively discussed the medical evidence. *Id.* at 16-18. A review of the record, however, shows the ALJ addressed most of the

---

[6] To the extent Dr. Kelly's opinion took into account Plaintiff's mental considerations, the ALJ also provides reasons for rejecting any additional mental limitations in the RFC. AR 17. Plaintiff's argument in the briefing, however, addressed only physical limitations.

evidence cited by Plaintiff.[7] To the extent the ALJ omitted evidence, "there is obviously no requirement that the ALJ reference everything in the administrative record." *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010). Further, Plaintiff does not explain why the unreferenced evidence was significantly probative and the Court refuses to create an argument for Plaintiff herein. *See Mays v. Colvin*, 739 F.3d 569, 576-77.

With regard to the third reason, it is proper to consider "the extent to which a medical source is familiar with the other information in [the] case record" when determining the weight given to a medical opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Plaintiff concedes "Dr. Kelly did not have the benefit of reviewing other medical reports in the record." Pl.'s Br. 15. Therefore, the Court will not disturb the ALJ's finding on this ground.

Plaintiff contests the fourth reason—Dr. Kelly's opinion was conclusory. Generally, the better explanation a medical source provides for its opinion, the more weight the ALJ should give the opinion. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). The Court finds the ALJ's determination is substantially supported—Dr. Kelly did not explain how the chronic pain and depression caused Plaintiff to be unable to work a full work schedule, to be required to take frequent breaks, and to be absent more than ten percent of the time.

Plaintiff also takes issue with the fifth reason for giving Dr. Kelly's opinion limited weight—that there was no evidence Dr. Kelly was familiar with the Agency's rules and regulations regarding disability. Pl.'s Br. 11-12. The Commissioner acknowledges that "this may not have

---

[7] The ALJ specifically addressed the following evidence cited by Plaintiff as supporting his position: the MRI and associated results (AR 15); Dr. Kelly's diagnosis of chronic low back pain and chronic pain syndrome (AR 16); lumbar radiculopathy (AR 16); positive straight leg raise testing (AR 16); restricted lumbar range of motion (AR 16-17); a report of increased pain prior to his alleged onset date (AR 16); the increase of pain medication both prior to and after his onset date (AR 16); and Plaintiff's reports of hand and foot numbness to Dr. Anderson (AR 16).

been a particularly strong reason." Br. in Supp. of Commr's Dec. (Def.'s Br.) [Doc. No. 21], 18. However, so long as the ALJ provides ample additional reasons for discounting the opinion, an ALJ may give lesser weight to a medical opinion notwithstanding the use of a factor that does not constitute a good reason. *See Paulsen v. Colvin*, 665 F. App'x 660, 665 (10th Cir. 2016) (unpublished).

Finally, Plaintiff also argues the ALJ failed to address Plaintiff's treatment relationship with Dr. Kelly. Pl.'s Br. 19. An ALJ, however, is not required "to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ must only provide good reasons in the decision for the weight applied. *See id.*

In sum, the ALJ was entitled to give Dr. Kelly's opinion less than controlling weight because he found the opinion was inconsistent with other substantial evidence in the record and not well supported. He then gave good reasons for rejecting Dr. Kelly's opinion utilizing relevant factors. There is no reversible error with regard to the ALJ's treatment of Dr. Kelly's opinion.

**B.     Conflict Between VE Testimony and DOT**

At step five, the burden shifts to the Commissioner to show that the claimant retains a sufficient RFC to perform work in the national economy, given the claimant's age, education and work experience. *See Williams v. Bowen*, 844 F.2d 748, 751. Plaintiff claims the Commissioner failed to satisfy this burden because the ALJ failed to obtain an adequate explanation as to inconsistencies between the VE's testimony and the DOT. All three jobs identified by the VE as jobs that could be performed by a hypothetical individual with Plaintiff's RFC require a reasoning level of three based on the DOT description of those jobs. *See* DOT § 211.462-010, 1991 WL

671840 (Cashier II); DOT § 211.467-030, 1991 WL 671853 (Ticket Seller); and DOT § 379.367-010, 1991 WL 673244 (Surveillance-System Monitor).

The DOT includes a General Education Development (GED) Scale composed of three divisions: (1) reasoning development; (2) mathematical development; and (3) language development. *See* DOT, Appendix C, Components of the Definition Trailer, 1991 WL 688702. The GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id*. The reasoning development component includes six levels. Level three, at issue here, requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id*.

In making the RFC determination, the ALJ found with respect to Plaintiff's mental work capacity that "[h]is work must be simple and routine." AR 15. At the hearing, the ALJ asked the VE to consider an individual with these limitations. AR 60.[8] The VE testified that the three jobs set forth above—Cashier II, Ticket Seller, and Surveillance System Monitor—are jobs available in the national economy that an individual with these limitations could perform. AR 61. The ALJ also asked the VE: "[a]nd your testimony today, has there been any deviation from the [DOT] that you feel needs to be explained or requires further explanation?" AR 61-62. The ALJ responded only that he "took the liberty" to classify Plaintiff's prior experience as a store owner as a branch manager rather than as a CEO. AR 62. The ALJ did not address any conflict between the DOT and the requirement that Plaintiff only perform simple and routine work.

---

[8] The ALJ specifically included the following in the hypothetical: "[y]ou will keep the work simple, repetitive and routine." AR 60.

9

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that an RFC limiting a claimant to "simple and routine work tasks" appeared inconsistent with jobs requiring a reasoning level of three and remanded the case to allow the ALJ to address the apparent conflict. Plaintiff contends *Hackett* requires a remand here.

In *Hackett*, the ALJ stated in his decision that the VE admitted during his testimony that his opinions about the jobs the claimant could perform did not "directly correspond" with information in the DOT. *Id*. at 1175. But the ALJ concluded that the VE adequately explained any inconsistency based on his own education, experience and observations about the jobs as actually performed in the economy. *Id*. Contrary to the ALJ's conclusion, the Tenth Circuit found "no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for the conflict." *Id*.

The court addressed the two jobs identified by the VE – surveillance system monitor and call-out operator – jobs requiring a reasoning level of three. The court stated that Plaintiff's RFC, limiting him to "simple and routine work tasks" seemed "inconsistent with the demands of level-three reasoning" and that level-two reasoning "appears more consistent with [the claimant's] RFC." *Id*. at 1176. The court reversed the ALJ's decision and remanded "to allow the ALJ to address the apparent conflict between [the claimant's] inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE." *Id*.

The Commissioner attempts to distinguish *Hackett*. The ALJ in this case addressed Plaintiff's education level as a vocational factor and specifically asked the VE regarding an individual with a high school education (which Plaintiff has attained). AR 19, 59. The Commissioner argues that individuals with a high school education can ordinarily perform semi-

10

skilled through skilled work and the VE has testified that Plaintiff had performed a number of semiskilled jobs in the past. Def.'s Br. 23 (*citing* 20 C.F.R. § 404.1564; AR 56).[9] The Commissioner relies on more recent unpublished decisions of the Tenth Circuit "recogniz[ing] that GED levels describe general educational background, not specific mental or skill requirements." *See* Def.'s Br. 23 (*citing Anderson v. Colvin*, 514 F. App'x 756 (10th Cir. 2013); *Mounts v. Astrue*, 479 F. App'x 860 (10th Cir. 2012)). For these reasons, the Commissioner argues the VE was reasonable in not testifying regarding any conflict and the ALJ was reasonable in not addressing such conflict in the decision.

Plaintiff, however, argues that the VE's testimony is insufficient because the ALJ failed to obtain a "reasonable explanation" about the conflict. *See* Pl.'s Br. 21-22. In support, Plaintiff cites recent district court cases distinguishing *Anderson* and *Mounts* from *Hackett*. Pl.'s Reply [Doc. No. 22], 7 (*citing Clark v. Colvin*, 2016 WL 1171153, at *5-6 (W.D. Okla. 2016), *adopted by* 2016 WL 1178807 (W.D. Okla. 2016); *Ward v. Colvin*, 2015 WL 9438272, at *2-4 (W.D. Okla. 2015), *adopted by* 2015 WL 9451073 (W.D. Okla. 2015)). In *Anderson*, the court found that any error resulting from a conflict between the VE's testimony and the DOT was harmless due to the fact the VE also identified jobs which required reasoning levels lower than level three. *See Anderson*, 514 F. App'x at 764. In *Mounts* the ALJ not only limited the claimant's RFC to work that did not involve complex tasks but also included a specific restriction limiting her to GED reasoning levels one through three. *See Mounts*, 479 F. App'x at 868.

---

[9] Plaintiff also argues that the court in *Hackett* did not discuss the claimant's education level. Pl.'s Br. 22. While the court did not address Plaintiff's education level in the discussion regarding the GED, the fact that claimant was a college graduate is referenced in the introductory paragraph. *Hackett*, 395 F.3d at 1170. Furthermore, the briefing presented by the Commissioner to the court in *Hackett* indicates that the hypothetical to the VE included reference to the claimant's education level. Appellee's Answer Brief, *Hackett v. Barnhart*, 395 F.3d 1168 (10th Cir. 2005), 2004 WL 3551752, at *39.

11

Thus, as set forth, in each of the cases cited by the Commissioner, any error in failing to assess inconsistencies between the claimant's RFC and the GED reasoning levels was harmless because either additional findings were made showing other jobs with lower reasoning levels could be performed or the ALJ expressly included the GED reasoning levels in the RFC. Neither of those circumstances are presented here.

Additionally, Tenth Circuit precedent is clear that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, *and elicit a reasonable explanation for any discrepancy on this point*." *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999) (emphasis added); *see also* SSR 00-4p, 2000 WL 1898704; *Hackett*, 395 F.3d at 1175 (noting that SSR 00-4p "essentially codifies *Haddock*" and "requires a reasonable explanation for conflicts between a VE's testimony and the DOT relating to any 'occupational information'") (citation omitted).

Here, the VE testified that the only deviation between his testimony and the DOT was regarding the classification of Plaintiff's prior work as a business owner. AR 61-62. He did not address any conflict regarding GED reasoning level. In other words, the ALJ did not provide any *reasonable explanation* for the conflict between the DOT and the VE's testimony regarding the reasoning levels of the jobs Plaintiff could perform.[10] And the ALJ bears the burden of proof at step five.

---

[10] Under SSR 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." *See id*., 2000 WL 1898704 at *4.

Although the ALJ stated in his decision that "[p]ursuant to SSR 00-4p . . . the vocational expert's testimony is consistent with the information in the [DOT]," *see* AR 20, an inconsistency in fact exists. Under these circumstances, the ALJ's step five determination is not supported by substantial evidence. *See, e.g., Finney v. Colvin*, No. 14-18-SPS, 2015 WL 1399896 at *3 (E.D. Okla. March 26, 2015) (despite testimony of VE that no conflicts existed between his testimony and the DOT with respect to frequent reaching requirement, ALJ was required to identify and elicit reasonable explanation for conflicts not noted by the VE where conflict in fact existed); *Cordova v. Astrue*, No. 10-cv-01294-PAB, 2011 WL 3236077 at **3-4 (D. Colo. July 28, 2011) (VE testified that no inconsistency existed between DOT and his opinion, but VE's testimony did not indicate he was addressing the reasoning levels of the jobs and ALJ failed to identify "what has been consistently identified as a conflict between level three reasoning and a limitation to simple and routine tasks"); *see also Haddock*, 196 F.3d at 1091 ("We do not mean by our holding that the [DOT] 'trumps' a VE's testimony when there is a conflict about the nature of a job. We hold merely that the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). Furthermore, the fact the ALJ stated in the decision that he considered Plaintiff's education does not remedy his failure to address the inconsistency. *See Brown-Mueller v. Colvin*, No. 13-CV-00537-PAB, 2016 WL 860468, at *2 (D. Colo. Mar. 7, 2016) ("The ALJ's mere mention of plaintiff's education level, without more, does not cure her failure to discuss the apparent inconsistency between her finding that plaintiff is limited to "simple, 3-to 4-step instructions" and work requiring "little or no judgment" and "few variables" and her conclusion that plaintiff is capable of performing work that requires level three reasoning."). Accordingly, a remand is required.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that the Commissioner's decision be reversed and the case be remanded for further administrative proceedings consistent with the recommendation set forth herein.

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by May 11, 2017. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

**STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 27th day of April, 2017.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE